Perez versus the city of Sweetwater. Good morning, may it please the court, Carolina Corona J meal with the Corona law firm on behalf of the appellant, Mr Juan Perez. This court must reverse the trial court's decision to overturn the jury's verdict because there's evidence in the record that supports municipal liability. In January of 2012, the city of Sweetwater was being run by gangsters. And the policy and custom requirement established in Monell was intended to prevent the imposition of municipal liability, where no wrong could be ascribed to the municipal decision makers. Here, it is clear that the actions that led to Mr Perez's injuries were sanctioned or at least overlooked by the city of Sweetwater. Can I ask you a question? At what level of specificity do we have to decide that there was customer policy? Because it's one thing, it seems to me for you to say there was there was a sort of a prevailing custom of corruption. But I mean, don't we need to drill down a little bit deeper as we would say in a qualified immunity context to say, is there some reason to ascribe liability specifically for the act that caused the harm here to the city? Two different things, it seems to me. And I agree with you. So I think that we've established what we need to prove is that there was a custom and that this custom was what caused the violation. Right. And I think that we've established overwhelmingly that there was this culture of corruption due to this towing ordinance that was enacted where they get five hundred dollars straight to the city on top of whatever the towing was, which was also related to the city, the tow company. But I guess I'm just asking you to get from the corruption of the towing policy, the alleged corruption of the towing policy to sort of willy nilly shooting at fleeing suspects, causing them to crash into cars and kill other people or whatever. So the corruption of the city in the affidavit that was entered into evidence, it outlines that they were using force and violence against citizens in order to enact or in order to effectuate these tows, that there was torture and other forms of violence that were used. And the causation of torture to enforce the towing policy. They were using the detectives were using torture really rampantly, and it was it doesn't necessarily tie it to the towing policy, but the towing policy is outlined. And then it says during these years that the investigation, your argument was that the towing policy and the practices surrounding its vigorous, robust enforcement were what was the moving force behind this constitutional violation. I thought that was your argument. That's that's one. That's the causal connection that I think that I understood you to be focused on. Am I misunderstanding? No, that's one of the theories of liability. And I think we've set forth a couple of other theories. Besides training. Right. The failure to train and especially Mr. Armando Gonzalez, which is the first shooter in this case, I think it's important that he was hired on the force for the part time for the Christmas holidays in December of 2011. This happened January 2nd of 2012. We've got a fleeing suspect going back to his car in disregard of a police order. I mean, those aren't disputed facts. Those are not disputed facts. And that is different from simply towing a car. Right. The reason and it's our position that the reason that this car was even stopped to begin with was to effectuate this tow policy. Well, OK, but but let me even back up, given those undisputed facts. Where is the ability to support and inference a reasonable jury to find that a more seasoned officer with more robust training would have done anything different? I mean, you've got this fleeing suspect heading for a car and taking off at high speed. It was a fleeing traffic violator. So it there and they shot at him 24 times. But then there's the whole suspicion of gang activity. There's the fact that he does have outstanding warrants against him. It's not a little bit more than that. The police had no idea regarding the warrants or the gang activity when they started shooting it. But he was fleeing for those reasons. He was fleeing for those reasons. But there was unbeknownst to the police at the time. And they shot at him 24 times. The jury found that there was no threat to . . . Objective inquiry, though, so that the police . . . Are the police imputed with that knowledge with an objective inquiry? Wouldn't they know about that? About the warrants? Yeah. Not at the time. I think . . . No, no, no, no. If it's an objective, not a subjective inquiry. Well, the objective would . . . A reasonably informed police officer would have known of that. Is that true or not? I'm not saying it is. I'm just asking. I don't believe it is, Your Honor. I believe what's important is what they knew, what they subjectively knew at the time that they shot. And there's no evidence to show that a reasonably informed officer would have known about these warrants because it was outside of their immediate jurisdiction. Here's what I worry about a little bit. And I'm not really sure. Maybe you can tell me why it is that the claims were structured this way. The case goes forward on a municipal liability theory before. You've still got some officer claims pending. Is that right? They've been resolved. Okay. But what I fear is that we are making an officer liability argument here in a municipal liability context, and those two things are very different. So, I mean, you have to show more than just you would if you were suing the officers. Right. You've got to show that there is, and especially if you're trading on the custom side of the custom or policy disjunction, the Supreme Court has kind of fleshed out policy for us a little bit, but custom I think as it should be because it's sort of ethereal. It's a pretty high bar, and I think, you know, to Judge Rosenthal's questions, you've got to knit that causal connection pretty tightly to show that the city itself, not the officers, but the city itself is properly ascribed liability for the specific harm at issue here. Okay. So there's evidence that the Detective Bureau generally was running amok, which was the testimony of an employee of Sweetwater at the time. There's testimony that they were going unsupervised and that they were basically doing stops outside of their jurisdiction and roughing up citizens for lack of a better word. Tell me what the causal connection, even if we assume that there's sort of this generalized approach of generally running amok, tell me how that maps onto the specific facts of this case, particularly those facts that are undisputed where we have initially police saying it was a very high speed, initial motivation for the stop, and neither the passenger nor driver able to remember if the driver was in fact speeding, if not racing. So it starts with the city of Sweetwater having this custom, the tow policy, and generally what's happening at the department at the time, coupled with them hiring then this Armando Gonzalez, which the city of Sweetwater themselves hired him, did not give him a copy of the standard operating procedures, did not review the standard operating procedures with him, sent him out on the road with a firearm, and this is precisely the case that was hypothesized in Canton, which I understand that only the Fifth Circuit has actually found a case that's analogous to those facts, but in Canton, the Supreme Court said that in a narrow range of circumstances, a pattern of similar violations might not be necessary because it's patently obvious that if you give a firearm to police officers, he's going to have to arrest fleeing felons or stop fleeing felons, and an obvious consequence may be a violation to citizens' federal constitutional rights. So it's our position that the theories, just on that basis alone, there can be municipal liability attached. Then coupled with what was going on in the city at the time, so the culture, the corruption, the violence that was happening, the lack of a records department, which it's our position that it was a purposefully lack of a records department because they did not want anybody to find out what was going on, there's no records of training because there was no records between 2010 and 2012, or no organization of the records, that Armando Gonzalez had been working there for potentially a week before he was out on the road on his own with a firearm, driving in his own car, that Officer Brioso pulled over this car outside of his jurisdiction, did not follow protocol because they allowed that to happen, called over Sweetwater instead of following what the mutual aid agreement required, which was to let the Miami-Dade Police Department and the people with jurisdiction know, have three more police officers come out, order the occupants out of the vehicle, talk to him about what are you doing driving this $100,000 car when the occupants are out of the vehicle, they do an investigation for 15 to 18 minutes, never once calling the supervisors or the people that actually had jurisdiction in the area, and then once this happens... So they could have done it differently, was there a violation of a constitutional right, and was this the moving force behind that violation, given your theory? Our theory is that once their plan was thwarted, then that's when they started shooting at him, and they shot... Their plan for the towing ordinance? The plan to tow the car. So it all comes back to the towing ordinance? That's part of it, yes. Including the failure to train? And the failure to train coupled with the environment at the time. So they're handling themselves in this manner. Then they hire somebody into this chaos, which is essentially what it was, where the mayor was eventually indicted, and these three or four police officers that are all there at the time were eventually indicted. Indicted for acts similar to what we have here? For acts related to the towing ordinance. Fleeing the scene? None that have to do with fleeing, Your Honor. Just admittedly, there is no prior incidents that have anything to do with fleeing. But they were accused of roughing up citizens, and at what point do you draw the line? It's okay to hit them, it's okay to torture them, but it's not okay to shoot at them. So our position is if you create that environment, you create the potential for your officers to then go a step further and then shoot at them and create the situation that happened with Mr. Perez. And I see that my time is almost up, and I just want to address the issue that if Your Honors, about the post-evidence actions that were not admitted. Admittedly, they were not exactly similar in that they didn't have anything to do with fleeing, but it does show specific incidents regarding other officers at the time in the city of Sweetwater that were torturing, seven other incidents that were torturing, and they all happened in the year of 2012 under the same administration. You saved your time for rebuttal. Thank you, Your Honor. Mr. Piper. Thank you, Judge Breyer. May it please the Court. I think that there are really only a couple of points that I would like to make, and the first addresses what was Judge Newsom's initial question about the level of specificity required of custom. It seems to me that during this discussion and in the briefing as well, there's a dead reckoning on what the issue should be before this Court, and that is was there sufficient evidence of a custom or policy of the city of Sweetwater that allowed the use of conscience-shocking deadly force, because that's what the jury was asked. That's what the verdict said. The same is true of the question of conscience-shocking high-speed chases. Those were the two specific questions that were asked of the jury, and then the district judge, Judge Altanaga, ruled that there was not sufficient evidence to establish a custom or policy. We've heard a lot about a tow ordinance, but that's not what we're here about, and that's not what the theory was, and that's not what the jury was asked to do. I think that a dead reckoning requires that we focus on the issue at hand, and my brief is very specific about the failure of evidence in that regard. I don't need to get into it in any great amount of detail. The only other point that I would like to make is we've heard training. We didn't hear a lot about it today, but we've heard something about it, and I think that a procedural matter is important here, and that is that during the case in chief, the plaintiffs, and this is mentioned in my brief, but I feel like I need to bring it up again. The plaintiffs didn't introduce any evidence of inadequate training whatsoever during their case in chief, and, of course, we got up and we moved for judgment as a matter of law under Rule 50. The court denied that at the time and had us proceed with our case. We then called all of our officers individually who we didn't represent, but we called each of them, and they testified about their training, and what they said was we're trained in accordance with FDLE standards. Training, recertification, that's what we do. That was pretty much it in terms of the discussion of training. There was no showing whatsoever, even on cross-examination, of the inadequacies of any training at the city of Sweetwater, and I think it's important to realize that that remained true even after the close of all the evidence, and so I want to make that point. Otherwise, I will stand on the brief unless the court has any additional questions. Thank you, Mr. Piper. Thank you very much. Ms. Jamiel. I will refer you guys to the Vineyard case that was decided in this circuit in 1993, and it's a similar custom failure-to-train case as this one, and in that case there was no prior incidents, and this court found that because the way that the city handled the complaint, that the department did not log complaints, and that the accused officers were the ones that were assigned to handle the complaints and there was no policies and procedures manual, that was sufficient to support a custom or policy argument to support municipal liability, and we think that this case is analogous, and in this case there's even more evidence than there was in Vineyard regarding the environment at the city at the time. Then in conjunction with what the city did after the fact, after the shooting occurred, the city then sent its own officers to kind of sanitize or investigate the scene. The city knew, all the administrators in the city knew that that area was not their jurisdiction, and they went over there to make sure, or it's reasonably inferred that they went over there to make sure that their officers would not get in trouble for this. They never required their officers to comply with their own requirements and their policies manual asking them to write a written report of what had happened, and even years later Armando Gonzalez insists that he should not have to do that and he shouldn't have to comply with those things because he was the shooting officer. And the salient question pursuant to Vineyard is whether this environment as a whole in the city was the moving force behind the violation, and I think it is clear that in this case what was happening at the city of Sweetwater is just as important as what happened that night because the only reason that these actions of these officers happened that way is because of what they saw happening, what they knew would be tolerated at the time, and what was tolerated, what was in fact tolerated, and what we saw after that that was okay. That to shoot at somebody down 8th Street, which is a very popular, driven thoroughfare in Miami-Dade County, that you can shoot at somebody 24 times as they're driving off and that's okay and there'll be no repercussions for it. It's our position that on September 25, 2017, a jury of 10 people, whom all deliberated and all of them actually unanimously agreed that the city of Sweetwater was liable for the injuries sustained by Mr. Perez. This court must respect the decision of that jury. When the evidence presented is considered in the light and with all reasonable inferences in favor of Mr. Perez as required by law, the verdict clearly stands. And under these facts, the reversal is required, and if your honors do not agree with that, we ask that you at least reverse and remand so that the other post-event incidents can be included and presented to the jury so that there's more evidence for municipal liability. Thank you. Thank you, your honor. The case will be in recess until tomorrow morning. Thank you.